FILED
2019 Nov-22 PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| STACEY LORENE BRAMLETT, ) )   Plaintiff, ) ) vs. ) ) ANDREW M. SAUL, Commissioner ) of the Social Security ) Administration,[1] ) )   Defendant. ) | Civil Action Number **2:18-cv-01877-AKK** |

## MEMORANDUM OPINION

Stacey Lorene Bramlett brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards, but that the ALJ's decision related to Bramlett's ability to concentrate or perform work that involves a good deal of walking or standing is not supported by substantial evidence. Therefore, the court reverses the decision denying benefits and remands the case for further consideration.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes him Commissioner Saul for Nancy Berryhill as the defendant in this action.

## I. PROCEDURAL HISTORY

Bramlett filed an application for supplement security income benefits, alleging that she suffered from a disability beginning November 1, 2015 due to lupus. R. 57, 137. After the SSA denied Bramlett's application, she requested a formal hearing before an ALJ. R. 70, 77, 80. Ultimately, after a hearing, the ALJ entered a decision finding that Bramlett was not disabled. R. 10-19. The SSA Appeals Council denied Bramlett's request for review, *see* R. 135, and summarily affirmed the ALJ's decision denying benefits, rendering the ALJ's decision the final decision of the Commissioner, R. 1. Having exhausted her administrative remedies, Bramlett filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision

as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

3

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant

ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of h[er] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)). Even so, "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), and "[t]he ALJ has a duty to develop the facts fully and fairly," *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984).

**IV. THE ALJ'S DECISION**

In performing the five-step analysis, the ALJ first determined that Bramlett had "not engaged in substantial gainful activity since December 3, 2015, the application date." R. 12. Accordingly, the ALJ proceeded to Step Two, finding that Bramlett had the following severe impairments: "hepatitis C, systemic lupus erythematosus (SLE), degenerative disc disease of the cervical spine, depressive disorder, and anxiety disorder . . . ." R. 12. The ALJ then proceeded to Step Three and found that none of Bramlett's impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 12.

Next, the ALJ determined Bramlett's residual functional capacity ("RFC"), finding that based on all of Bramlett's impairments:

> [Bramlett] has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except no climbing ladders, ropes, or scaffolds. [Bramlett] cannot have exposure to excessive vibration, unprotected heights, hazardous machinery, extreme head, or extreme humidity. She cannot

5

> work outside. [Bramlett] is limited to performing unskilled work with few workplace changes, but is able to attend and concentrate for two-hour periods at a time and make simple work-related decisions. [Bramlett] can interact occasionally with coworkers, but can have no more than occasional direct interaction with the general public.

R. 14. Because Bramlett has no past relevant work, the ALJ proceeded to Step Five, where, based on Bramlett's RFC, age, education, and prior work experience, and relying on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Bramlett] can perform . . . ." R. 17. As a result, the ALJ found that that Bramlett was not disabled from the period of her application through the date of the ALJ's decision. *See* R. 19.

## V. ANALYSIS

On appeal, Bramlett argues that the ALJ erred by failing to properly apply the listings of impairments and by failing to develop an RFC that accounts for all of her limitations. Doc. 9 at 4. The court addresses each of these issues in turn.

### A. **Whether Bramlett's impairment of lupus meets the Listing**

Bramlett contends that she meets Listing 14.02 for lupus and that the ALJ erred by incorrectly applying that Listing. Doc. 9 at 10-13. The court disagrees. To begin, Bramlett faults the ALJ for not discussing Listing 14.02 in her analysis at Step Three. *Id.* at 9-10. But, while the ALJ did not explicitly consider Listing 14.02 in her discussion at Step Three, *see* R. 12-13, the ALJ discussed Bramlett's lupus and

6

Listing 14.02 in her analysis of Bramlett's RFC, and the ALJ found that Bramlett's impairment did not meet or medically equal the Listing, R. 15. Thus, even assuming the ALJ erred by not discussing Listing 14.02 in her analysis at Step Three, the error is harmless if the ALJ applied the correct legal standard and substantial evidence supports her finding. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When [] an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. [] To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (citing 30 C.F.R. §§ 404.1525(a)-(d); 404.1526(a)). The ALJ found that Bramlett has a diagnosis of lupus, or SLE, as required for Listing 14.02, but that she did not meet the Listing's criteria. R. 15. According to Bramlett, the ALJ failed to apply the correct legal standard for Listing 14.02 because the ALJ purportedly incorrectly paraphrased the specific criteria of the Listing. Docs. 9 at 10-13; 13 at 2.

7

Listing 14.02 directs a finding of disability for SLE when the following criteria have been met:

A. Involvement of two or more organs/body systems,[2] with:

1. One of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).[3]

or

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appx. 1, Part A, § 14.02. Rather than reciting all of the Listing's criteria, the ALJ stated simply that:

---

[2] "Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ('lupus fog'), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis)." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 14.00(D)(1)(a).

[3] For purposes of the Listing, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function. Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 14.00(C)(2).

> Since the record does not establish [either] [A] involvement of two or more organs/body systems or [B] repeated manifestations of SLE with marked limitation of activities of daily living, maintaining social functioning or completing tasks in a timely manner, [Bramlett] does not meet or equal 14.02 of the Listing of Impairments.

R. 15. Contrary to Bramlett's contention, this is an accurate statement of certain required criteria of Listing 14.02, and it reflects that the ALJ considered both sections of the Listing. In addition, Bramlett has not cited any authority for the proposition that an ALJ must recite all of a listing's criteria, docs. 9 at 10-13; 13 at 2-3, and the court is not aware of any such authority. Thus, Bramlett has not shown that the ALJ applied the wrong legal standard for Listing 14.02.

Next, Bramlett argues that the ALJ erred because the record shows that she meets the requirements for Listing 14.02 based on either section A or B. *See* docs. 9 at 11; 13. Specifically, Bramlett contends that she satisfies the Listing based on her "long history of joint pain related to SLE and swelling in her feet, hematological disorders such as leukopenia and pancytopenia, skin disorders such as malar rash and photosensitivity, and mental disorders such as anxiety and depression." Doc. 9 at 12. But, the question before the court is whether substantial evidence supports the ALJ's conclusion that Bramlett does not meet or medically equal Listing 14.02, not whether the record may support the opposite conclusion. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). And, as the Commissioner points out, much of the medical evidence Bramlett cites in support of her contention

predates her alleged onset and application date and, therefore, does not show that she meets the Listing's criteria during the relevant period. *See* docs. 9 at 5-8; 12 at 5. The substantial evidence supports the ALJ's determination that Bramlett's lupus does not meet the specific criteria of Listing 14.02.

With respect to the Section A criteria, records from Dr. Nop Unnoppet, Bramlett's rheumatologist, reflect that Bramlett had leukopenia, a hematological disorder from June 2016 through June 2017, R. 644, 646, 649, 652, but the ALJ did not consider that diagnosis in her decision, *see* R. 10-19. Dr. Unnoppet's records also reflect that Bramlett has photosensitivity, or rash. R. 667. In addition, as the ALJ noted, Bramlett suffers from joint pain due to lupus, R. 644-46, 649, 654, 656, 665, and several mental disorders, R. 676-684. Thus, the record establishes that Bramlett's lupus meets the Section A criteria for "[i]nvolvement of two or more organs/body systems," and the ALJ erred by concluding otherwise.

Still, to meet or medically equal Listing 14.02(A), Bramlett must also show that at least one of her organ/body systems is affected to "at least a moderate level of severity" and that she has at least two of the constitutional symptoms or signs of lupus. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 14.02(A). *See also Wilson*, 284 F.3d at 1224. Bramlett contends that the record shows she has three constitutional symptoms—severe fatigue, malaise, and involuntary weight loss. Doc. 9 at 12. To support her contention, Bramlett cites her testimony that she spends up to thirteen

hours in bed for twelve to thirteen days a month due to symptoms of her lupus. R. 48-49. The ALJ discounted Bramlett's testimony because it was not consistent with Bramlett's relevant medical records. R. 14-15. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Specifically, during visits to Dr. Unnoppet, Bramlett denied fatigue, generalized weakness, lethargy, malaise, and weight loss in September 2016, December 2016, and June 2017, R. 645, 656, 660, and denied lethargy or fatigue in June 2016, July 2016, and March 2017, R. 651, 665, 667. And, none of Dr. Unnoppet's records reflect that Bramlett reported severe fatigue or malaise as a result of her lupus. *See* R. 644-670. These records support the ALJ's finding that Bramlett's testimony about her fatigue was not consistent with the medical record, and they indicate that Bramlett's lupus did not cause severe fatigue.

Bramlett also claims to have suffered from involuntary weight loss, and that she reported to Dr. David Farber, her psychiatrist, in June 2017 that somebody asked if she is anorexic. R. 681. As the ALJ noted, however, the medical records reflect that Bramlett denied weight loss at visits to Dr. Unnoppet in September 2016, December 2016, and June 2017. R. 645, 656, 660. In addition, her weight was relatively stable between June 2016 and June 2017, fluctuating between 136 pounds in June 2016 and 125 pounds in June 2017, R. 664-670, and Bramlett has not cited anything in the record to suggest that lupus caused her eleven-pound weight loss over the course of that year, *see* docs. 9; 13. Instead, Bramlett's testimony indicates

11

that her weight loss may be caused by "lack of sleep and the anxiety and depression." R. 44.

All of these records constitute substantial evidence to support a finding that Bramlett did not have involuntary weight loss or severe fatigue. Thus, because nothing suggests that Bramlett's lupus caused fever, *see* docs. 9; 13, she has not shown that she had at least two constitutional symptoms or signs, and her impairment does not meet or medically equal Listing 14.02(A).

Next, with respect to the criteria for Listing 14.02(B), the ALJ found that the record does not establish that Bramlett had repeated manifestations of SLE with marked limitation in activities of daily living, maintaining social functioning or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. R. 15. As the ALJ noted, Bramlett testified that she can wash dishes, make the bed, work in the garden, go "yard selling," and go to church on her good days. R. 13. In addition, the medical records during the relevant time reflect that Bramlett was pleasant and had normal mood and affect, although she was tearful in speaking with her psychiatrist. *See* R. 644-684. Moreover, the record reflects that Bramlett's SLE was controlled by June 2017, and it supports the ALJ's decision to discount Bramlett's testimony regarding her fatigue and the number of "bad" days she has to spend in bed due to lupus. *See* R. 14-15, p. 11, *supra*. Thus, substantial

evidence supports the ALJ's finding that Bramlett had only mild limitations in activities of daily living and moderate limitations in social functioning. *See* R. 13.

As to Bramlett's concentration, persistence, and pace, Bramlett testified that she can read only one to two paragraphs at a time, and that she can only concentrate for approximately ten minutes at a time. R. 42, 50, 193. Despite that testimony, the ALJ found that Bramlett has no more than moderate limitations with concentrating because medical records reflect that she was "alert and oriented x 4" upon exam. R. 13. But, "alert and oriented x 4" only means that Bramlett was alert and oriented to person, place, time, and situation; it is not a measure of a patient's ability to focus or concentrate over a period of time. *See Ponder v. United States*, 2014 WL 12569438, at *7 (N.D. Ala. 2014). Therefore, the records cited by the ALJ are not substantial evidence to support her finding that Bramlett has only moderate limitation in concentrating, persisting, and maintaining pace. The error is harmless, however, because even assuming Bramlett's testimony establishes that she has a marked limitation in completing tasks due to deficiencies in concentration, persistence, or pace, her SLE still does not meet or medically equal Listing 14.02(B) because she does not have at least two of the constitutional symptoms or signs. *See* pp. 11-12, *supra*. *See also* 20 C.F.R. pt. 404, subpt. P, appx. 1, § 14.02(A); *Wilson*, 284 F.3d at 1224.

To close, while it is clear that Bramlett has suffered for years from the effects of SLE, and the record may support a contrary finding, so long as the ALJ applied correct legal standards and reached a decision that is supported by substantial evidence, the court may not second guess the ALJ's findings. *See Martin*, 894 F.2d at 1529. Thus, because the ALJ applied the correct legal standard and substantial evidence supports her conclusion, the ALJ's determination that Bramlett's SLE did not meet or medically equal Listing 14.02 is due to be affirmed.

### B. Whether Substantial Evidence Supports the ALJ's Determination of Bramlett's RFC

As her second contention of error, Bramlett argues that ALJ's determination of her RFC is not based on substantial evidence because, among other things, it is not supported by an RFC assessment by a treating or examining physician. *See* doc. 9 at 13-17. But, "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). *See also* 20 C.F.R. § 404.1527(d)(2); SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996). And, this court has previously held that "the law of this Circuit does not require an RFC from a physician." *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011). Thus, Bramlett cannot establish that the ALJ erred in determining her RFC simply because it is not based on an RFC assessment from a physician.

Bramlett challenges also the ALJ's determination that Bramlett has an RFC to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b), which "requires a good deal of walking or standing,"[4] and that Bramlett is limited to unskilled work, but can "concentrate for two-hour periods at a time and make simple work-related decisions." R. 14. *See also* 20 C.F.R. § 416.967(b). Bramlett contends that nothing supports the ALJ's finding that she can concentrate for two-hour periods, and she argues that the ALJ improperly rejected her testimony that she can only concentrate for ten minutes at a time and can only stand for up to one hour because her feet swell due to her lupus. Doc. 9 at 14-16. When an ALJ discredits a claimant's testimony regarding pain and subjective symptoms, "[she] must discredit the testimony explicitly and articulate explicit and adequate reasons for doing so." *Robinson*, 365 F. App'x at 997 (citing *Dyer*, 395 F.3d at 1210). Here, the ALJ acknowledged Bramlett's testimony that she has problems concentrating, and that her feet swell and she can only tolerate up to one hour of activity before she has to sit down for thirty minutes. R. 14. The ALJ found, however, that Bramlett's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 14-15. But, the ALJ did not state adequate reasons to support

---

[4] A "good deal of walking or standing" means "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

her decision to discredit Bramlett's subjective testimony regarding her ability to concentrate or stand for more than an hour. As noted above, the ALJ discounted Bramlett's testimony regarding her ability to concentrate because treatment records show that Bramlett was alert and oriented times four. R. 13, 16. Those records, standing alone, do not provide an adequate reason to reject Bramlett's testimony that she can only read one or two paragraphs or concentrate for ten minutes at a time, *see* p. 13, *supra*, and the ALJ did not cite any other records to contradict Bramlett's testimony, *see* R. 13. In addition, the ALJ does not cite any other evidence to support her determination of Bramlett's ability to concentrate. *See* R. 10-19. Therefore, because an ALJ is not allowed to "indulge in unfounded hunches" about a claimant's condition, *see Wild v. Astrue*, 581 F. Supp. 2d 1155, 1160 (N.D. Ala. 2008), and the Commissioner does not cite evidence in his brief to support the ALJ's decision on this issue, *see* doc. 12, the court cannot find based on this record that the ALJ's determination that Bramlett can concentrate for up to two hours at a time is supported by substantial evidence.

Next, in support of her decision that Bramlett's subjective complaints of pain are inconsistent with the medical record, the ALJ noted that (1) Bramlett's lupus responded to treatment when she sought treatment at an emergency room in December 2015 for a lupus flare-up; (2) records from Dr. Unnoppet reflect that although Bramlett had moderate symptoms of lupus in July 2016 and March 2017,

16

she reported only mild symptoms in September 2016, and her lupus was controlled in June 2017; (3) in December 2016, Bramlett reported that Advil helped with her pain from lupus; and (4) Dr. Unnoppet's records reflect that Bramlett had no edema, or swelling, upon exam. R. 15. *See also* R. 644-670. This evidence supports the ALJ's finding that Bramlett's testimony regarding the severity of her subjective symptoms is not consistent with her medical records. Even so, the records cited by the ALJ are not necessarily inconsistent with Bramlett's testimony that her feet swell after an hour of standing or activity, and they do not show that Bramlett can perform work that involves a good deal of walking or standing. And, while Bramlett did not have edema when she saw Dr. Unnoppet, the doctor consistently noted tenderness in both her feet, or in her knees upon physical exam. R. 645-46, 656, 662. The ALJ failed to specifically address this portion of the medical evidence. Thus, considering Bramlett's testimony and her relevant medical records as a whole, based on the current record, the court cannot find that the ALJ's determination that Bramlett can perform less than a full range of light work, which "requires a good deal of walking or standing," 20 C.F.R. § 416.967(b), is supported by substantial evidence.

To close, in light of the records cited by the ALJ and discussed above, it is unclear how the ALJ reached the conclusion that Bramlett can concentrate for up to two-hour periods of time and perform work that requires a good deal of walking or standing. Therefore, because the ALJ has a duty to develop a full and fair record,

17

*see Sims*, 520 U.S. at 110-11; *Todd*, 736 F.2d at 642, and the current record lacks an apparent evaluation of Bramlett's ability to concentrate or to perform work activities such as sitting, standing, walking, lifting, bending, or carrying, the ALJ's determination of Bramlett's RFC and her decision denying benefits is due to be reversed and remanded for the ALJ to address the issue related to Bramlett's ability to concentrate and ability to perform work that requires a good deal of walking or standing.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Bramlett is not disabled is not supported by substantial evidence. Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion. A separate order in accordance with this memorandum opinion will be entered.

**DONE** the 22nd day of November, 2019.

/s/ Abdul Kallon
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE